**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 04-10227-RWZ** |
| | ) | |
| **STEPHEN BRUM** | ) | |

**GOVERNMENT'S OPPOSITION TO**
**MOTION TO SUPPRESS STATEMENTS**

The government hereby respectfully submits its opposition to the defendant's Motion to Suppress Statements (the "Motion").

**BACKGROUND**

This case arises from the recovery of a loaded Smith & Wesson handgun from the defendant's person by the New Bedford Police Department on February 8, 2004. The defendant initially was charged in state court with offenses arising from this incident. On June 22, 2004, a complaint was issued by (now Chief) United States Magistrate Judge Charles B. Swartwood charging the defendant with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). The defendant had his initial appearance before Magistrate Judge Swartwood on June 28, 2004, and it was in that connection that the defendant made the statements at issue here.

Appended hereto as Exhibit A is the report of ATF Special Agent ("S/A") Sheila O'Hara recounting the statements and the circumstances under which they were made. As the report indicates, on June 28, 2004, S/A O'Hara processed the defendant in the U.S. Marshal's facilities in this Courthouse. In so

doing, she told the defendant the crime with which he was charged and that it related to the state firearms charges that he was already facing. S/A O'Hara told the defendant that he was going to have an initial appearance before a Magistrate Judge and that it would take about ten minutes. The defendant asked if he would have counsel present and S/A O'Hara responded that she did not know whether there would be one waiting upstairs. S/A O'Hara said that the defendant would not be entering any plea that day, but that a probable cause/detention hearing would be scheduled at which the defendant would definitely have a lawyer if he could not afford to retain one himself.

S/A O'Hara and a Deputy Marshal then escorted the defendant upstairs for the initial appearance. During the elevator ride, S/A O'Hara told the defendant that the federal charge concerned only ammunition because the government could not establish an interstate nexus for the firearm that had been recovered from him. Once the elevator stopped, the defendant was escorted to a holding cell near the courtroom. S/A O'Hara told the defendant that she would be interested in learning from whom the defendant had obtained the firearm, but that this was something that the defendant should discuss with his attorney when one was assigned to him. At this time the defendant started to discuss his possession of the firearm, but S/A O'Hara stopped him and told him that she had not read the defendant his Miranda rights and he

did not have to say anything to her. The defendant indicated that he understood and then asked S/A O'Hara how much time he could be facing. S/A O'Hara told him that, because of his criminal record, he could be facing a minimum of 15 years. The defendant said that he did not have any violence in his record, and S/A O'Hara responded that he had a number of "B&Es," which the courts consider crimes of violence, and that because of these he could possibly receive a lengthy sentence.

The defendant then said that he could do 15 years for having a gun that he found and only had for approximately three days. S/A O'Hara again stopped the defendant and advised him that he did not have to say anything to her about this. She then asked whether, notwithstanding that she had not read the defendant his Miranda rights, he was aware of them and that he did not have to tell her anything or say anything about possessing the firearm. The defendant said that he was aware of his Miranda rights, and proceeded to tell S/A O'Hara that he found the firearm in or around a dumpster located behind his residence at 11 Nye Street. The defendant said that there was a group of young men who were always out in the neighborhood dealing drugs and that they sometimes got chased by the police and stashed their drugs in the dumpster area. The defendant said that, if he saw this happening, he would go out back and retrieve the drugs for himself.

The defendant further said that it was under similar circumstances that he found the gun. He saw a group of kids running through the back of his residence. A short while later the defendant went out to the dumpster area, kicked some garbage around, and found the gun. S/A O'Hara asked the defendant if he knew or could describe the group of young men who disposed of the firearm, and the defendant said that he did not know them and could not identify them. S/A O'Hara advised the defendant that he should have told the police about the firearm and turned it over to them that night and should not have kept the weapon.

The defendant was then escorted to the courtroom.

## ARGUMENT

### I. THE MOTION SHOULD BE DENIED WITHOUT A HEARING

A criminal defendant is not entitled, as a matter of right, to an evidentiary hearing on every motion that he chooses to file. United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." Id. at 603. For example, evidentiary hearings on motions to suppress physical evidence are required only when a defendant makes a sufficient showing that an illegal search has occurred. United States v. Lewis, 40 F.3d 1325 (1st Cir. 1994). "To make this showing the defendant must allege facts,

sufficiently definite, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." Id.

Here, the defendant has failed to meet this standard. See United States v. Moran-Garcia, 783 F. Supp. 1266 (S.D. Cal. 1991)(court need not conduct evidentiary hearing on pretrial motion to suppress statements that is not supported by sworn statement of person with personal knowledge of facts). The defendant's Motion rests, in part, on the defendant's claim that he has an extensive history of psychological disorders, and that he was denied access to medications for these disorders for a period of four months prior to making the statements, during which he was in state custody. But these assertions make their sole appearance in the defendant's statement of facts; they are supported by the affidavit of neither the defendant, nor a mental health professional, nor anybody else. Unless and until the defendant places these issues properly before the Court in the form of definite, detailed, and nonconjectural facts alleged by affidavit, the Court should not consider them and should decline to hold a hearing with respect to them.

## II. THE MOTION SHOULD OTHERWISE BE DENIED ON THE MERITS

The defendant claims that his statements were obtained in violation of Miranda v. Arizona, 384 U.S. 486 (1966). In order for the Miranda doctrine to be invoked, however, two ingredients must be present: (1) custody, and (2) police interrogation. See,

e.g., United States v. Conley, 156 F.3d 78 (1st Cir. 1998). Here, the defendant's Motion fails because he was not subjected to police questioning.

Indeed, the facts here are similar to those in Conley. In that case, postal inspectors arrested Conley for drug trafficking at his apartment and read him his Miranda rights. At some point Conley indicated that perhaps he should get a lawyer. The inspectors tried to locate a telephone book to assist Conley in this connection but were unsuccessful. Conley kept asking one of the inspectors to tell him what they had on him. One of them said that he could not have a dialog with Conley due to his request for counsel, but ultimately agreed to speak on the condition that Conley not reply. The inspector then described the evidence against the defendant, during which Conley twice interjected self-incriminatory comments.

In upholding the denial of a motion to suppress these statements, the First Circuit recognized that "[i]nterrogation, properly understood, involves either 'express questioning or its functional equivalent.'" Conley, 156 F.3d at 83, citing Rhode Island v. Innis, 446 U.S. 291 (1980). The court further stated that "interrogation encompasses 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" Conley, 156

F.3d at 83, citing Innis, 446 U.S. at 301. The court concluded that the postal inspector's words and actions did not fit this definition; that, in fact, he had affirmatively told Conley that interrogation had to cease; that describing evidence and charges in response to a suspect's request for such information was not reasonably likely to elicit incriminating responses; and that Conley's remarks appeared to have been spontaneous utterances. Id.

Similarly, here most of S/A O'Hara's comments to the defendant were describing either the charges or the process.[1] She did tell him when he was in the holding cell behind the courtroom that she would be interested in learning from whom he had obtained the firearm, but she told the defendant in the same breath that this is something he should discuss with his lawyer, advice that obviously was calculated to keep the defendant quiet rather than to elicit a response. See also United States v. Lopez, 380 F.3d 538, 546 (1st Cir. 2004)( providing information suspect needs to know to convey to attorney not interrogation);

---

[1]The defendant faults S/A O'Hara for telling him before the initial appearance that she did not know whether counsel would be waiting for the defendant in the courtroom, claiming that the appearance before the Magistrate Judge was to address precisely such issues and that S/A O'Hara should have known this. This Court can take judicial notice of the fact that the official appointment of counsel in this Courthouse does not occur unless and until a defendant completes a financial affidavit in the courtroom establishing the eligibility of the particular defendant for such, and that appointed attorneys for defendants are not invariably present at initial appearances.

United States v. Genao, 281 F.3d 305 (1st Cir. 2002). When the defendant nonetheless started to talk about his gun possession, S/A O'Hara stopped him, saying she had not read him his Miranda rights -- i.e., she affirmatively was not questioning him -- and he did not have to say anything to her. When the defendant asked about how much time he was facing, S/A O'Hara responded, truthfully telling him that he could well be facing a minimum mandatory sentence of 15 years, hardly information that one would expect to result in an admission. When the defendant nonetheless bemoaned the fact that he could get 15 years for a gun that he had found and only had for three days, S/A O'Hara again stopped him and again emphasized that he had not been read his rights and did not have to say anything. The defendant continued with his admissions anyhow, after confirming that he was aware of his rights under Miranda. In sum, not only did S/A O'Hara not subject the defendant to interrogation, but she interrupted the defendant's admissions more than once to make clear that he did not have to say anything.

It is true that in Conley, unlike here, the defendant was read his Miranda rights, but that is not a distinction that makes a difference given the absence of interrogation. In United States v. Taylor, 985 F.2d 3 (1st Cir. 1993), as here, Taylor, who had been arrested and was being transported in a police car, was not given Miranda warnings because the officer did not intend

to question her. When Taylor asked, "Why is this happening to me," the officer responded that she could not "be growing dope on your property like that." Taylor made some incriminating statements immediately thereafter. The First Circuit held, inter alia, that the officer's response to Taylor's direct question was not the functional equivalent of interrogation and upheld the admission of Taylor's statements.

To be sure, here the defendant has also claimed, in conclusory fashion, that he was rendered particularly susceptible to questioning through the withholding of medication, and that this circumstance distinguishes his case from Colorado v. Connelly, 479 U.S. 157 (1986). But, as just shown, there was no questioning. Moreover, as noted above, the defendant has failed to provide the necessary factual support for this claim. Indeed, even what he says in the Motion is insufficient to warrant any relief: there is no concrete evidence proffered as to what the symptoms are of his alleged disorders; what medications he allegedly was not receiving; what difference it would have made had he been receiving such medications; and what reason there is to believe that S/A O'Hara knew any of this and exploited it to her advantage in a way that can be construed as "coercive" and that transforms her interactions with the defendant into the functional equivalent of interrogation.

In sum, the defendant has failed to raise any valid claim

that he was subjected to interrogation in contravention of Miranda and thus his Motion should be denied.

**CONCLUSION**

For the foregoing reasons, the Motion should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/Robert E. Richardson
ROBERT E. RICHARDSON
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

Suffolk, ss. Boston, Massachusetts
March 17, 2005

I hereby certify that a true copy of the foregoing was served by electronic filing upon counsel for the defendant, Benjamin D. Entine, Esq., 77 Franklin Street, Third Floor, Boston, MA 02110.

/s/Robert E. Richardson
Robert E. Richardson
Assistant U.S. Attorney